IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

YVONNE LYNN PARKER, et al.,

        Plaintiffs,

v.                                        CIVIL ACTION NO. 2:12-cv-01744

ANALYTIC BIOSURGICAL SOLUTIONS;
et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Analytical Biosurgical Solutions' ("ABISS") Motion to Dismiss [Docket 9]. The plaintiffs filed a response, ABISS filed a reply, and the motion is ripe for review. Further pending before the court is the plaintiffs' Motion for Leave to File Surreply in Opposition to Defendant Analytic Biosurgical Solutions' Motion to Dismiss [Docket 16]. For the reasons stated below, ABISS's motion to dismiss [Docket 9] is **GRANTED**, and the plaintiffs' motion for leave to file surreply [Docket 16] is **DENIED** as moot.

**I.    Background**

This case is one of several thousand assigned to me by the Judicial Panel on Multidistrict Litigation. These MDLs involve the use of transvaginal surgical mesh to treat pelvic organ prolapse or stress urinary incontinence. In this case, the plaintiffs Yvonne Lynn Parker and her husband, David Parker, allege that Ms. Parker suffered injuries as a result of the Aris Transobturator Tape System that was implanted in her. (*See* Compl. [Docket 1], at ¶ 32).

Analytic Biosurgical Solutions ("ABISS") is a French company that manufactures synthetic mesh. Between October 12, 2005 and October 2, 2006, ABISS sold its synthetic mesh products to Mentor Corporation, a Minnesota corporation with its principal place of business in Santa Barbara, California. (*Id.* at ¶ 25-26). Currently, ABISS sells and ships this mesh to Coloplast A/S, a Danish Corporation.[1] (*See* Dec. of Jean-Marc Beraud [Docket 14-1], at ¶ 3). ABISS has no involvement in the sale or marketing of the mesh after it is shipped to Coloplast A/S. *Id.* at ¶ 6-10. The Complaint against ABISS alleges the following causes of action: negligence; strict liability-design defect; strict liability-failure to warn; breach of express warranty; breach of implied warranty; unjust enrichment; fraud; negligent misrepresentation; and loss of consortium. (*See* Compl. [Docket 1]). In the instant motion, ABISS seeks to dismiss the plaintiffs' Complaint, asserting that there is no basis for personal jurisdiction. (*See* Mem. of Law in Supp. of Specially Appearing Def. ABISS's Mot. to Dismiss [Docket 10], at 3).

## II. Legal Standard

### A. Motion to Dismiss

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). When the court addresses the jurisdictional question based on the "motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* In those circumstances, "courts must construe all

---

[1] Coloplast A/S and Coloplast Manufacturing, US, LLC were dismissed without prejudice by Pretrial Order # 28.

relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (internal quotation marks omitted).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pre-trial motions. In multidistrict litigation cases such as this, personal jurisdiction is determined by reference to the law of the transferor forum. *In re Plumbing Fixtures Litig.*, 342 F. Supp. 756, 758 (J.P.M.L. 1972). Specifically, "in cases that are consolidated for pretrial purposes under 28 U.S.C. § 1407, a transferee court can exercise personal jurisdiction only to the same extent as the transferor court could." *In re Sterling Fisher & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 300 (E.D.N.Y. 2002). This case was transferred to this court from the District of Minnesota and therefore, I apply Minnesota law for the purpose of determining the issue of personal jurisdiction.

### C. Personal Jurisdiction

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994). The Minnesota long-arm statute "extend[s] jurisdiction to the maximum limit consistent with due process." *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). Consequently, the statutory inquiry merges with the constitutional inquiry, and the court must determine whether exercising personal jurisdiction over the defendant is consistent with the Due Process Clause. *See id.*

"Due process allows a court to exercise personal jurisdiction over a non-resident defendant when the defendant has certain minimum contacts with [the state] such that the

3

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 1431 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). The Supreme Court has recognized that this protection provided by the Due Process Clause extends to foreign corporations. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2852–54 (2011).

There are two approaches to finding jurisdiction over persons outside a state's borders: specific and general jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 15. (1985). If the suit does not arise out of the defendant's contacts with the state, the defendant must have "continuous and systematic" contacts with the state to confer general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416 (1984). On the other hand, if the defendant's contact with the state is the basis of the suit, then specific jurisdiction applies. *Burger King*, 471 U.S. at 472. The Eighth Circuit applies a five-factor inquiry to determine whether specific jurisdiction exists focusing on:

> (1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties.

*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004) (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). The first three factors are of greatest importance and are used to determine whether the defendant purposefully availed itself of the protections of the forum. *See id.*

### III. Analysis

#### A. Personal Jurisdiction over ABISS

The plaintiffs allege that ABISS is subject to general jurisdiction in Minnesota because ABISS's FDA agent is located in Minnesota. (*See* Mem. of Law in Supp. of Pls.' Resp. to Def.

ABISS's Mot. to Dismiss [Docket 13]). However, this agent is an employee of Coloplast Corp., not ABISS, and her role in Minnesota does not rise to a sufficient level to create systematic and continuous contacts between ABISS and Minnesota. *See Goodyear*, 131 S. Ct. at 2853–54 (stating that a corporation is subject to general jurisdiction in a forum "in which the corporation is fairly regarded as at home"). Thus, the inquiry centers on whether ABISS is subject to specific jurisdiction in Minnesota.

To support their argument that ABISS is subject to specific jurisdiction in Minnesota, the plaintiffs point to an "Exclusive Supply Agreement" ABISS entered into with Mentor, a Minnesota corporation with its principal place of business in California. (*See* Mem. of Law in Supp. of Pls.' Resp. to Def. ABISS's Mot. to Dismiss [Docket 13], at 5). Ms. Parker was implanted with the Aris sling on May 12, 2006, five days prior to the purchase agreement between Coloplast A/S and Mentor whereby Mentor transferred certain assets—including the Exclusive Supply Agreement with ABISS—to Coloplast A/S.[2]

A recent decision of the United States Supreme Court is relevant to the instant personal jurisdiction analysis. In *J. McIntyre Machinery, Ltd. v. Nicastro*, the United States Supreme Court considered whether New Jersey had personal jurisdiction over a foreign manufacturer. 131 S. Ct. at 2785 (2011). The New Jersey Supreme Court found that New Jersey's courts could exercise personal jurisdiction over a foreign manufacturer "so long as the manufacturer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'" *Id.* (quoting *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 591–92 (N.J. 2010)). Applying this logic,

---

[2] ABISS argues, in its response to the plaintiffs' motion for leave to file surreply, that the plaintiffs' arguments are inconsistent: if the plaintiffs rely on the relationship between ABISS and Mentor, then the plaintiffs cannot rely on any relationship between ABISS and Coloplast. In any event, there are insufficient minimum contacts to assert personal jurisdiction over ABISS in this matter.

the New Jersey Supreme Court "concluded that a British manufacturer of scrap metal machines was subject to jurisdiction in New Jersey, even though at no time had it advertised in, sent goods to, or in any relevant sense targeted the State." *Id.*

The United States Supreme Court reversed, finding no personal jurisdiction. *Id.* (plurality opinion); *id.* at 2791 (concurring opinion). Justice Kennedy delivered the plurality opinion with three Justices joining. *Id.* at 2783. Justice Breyer delivered an opinion, joined by Justice Alito, concurring in the judgment. *Id.* at 2791. Justice Ginsburg delivered an opinion, joined by two Justices, dissenting. *Id.* at 2794. In *J. McIntyre*, Nicastro's counsel stated several facts in support of the state's assertion of jurisdiction:

> First, an independent company agreed to sell J. McIntyre's machines in the United States. J. McIntyre itself did not sell its machines to buyers in this country beyond the U.S. distributor, and there is no allegation that the distributor was under J. McIntyre's control.
>
> Second, J. McIntyre officials attended annual conventions for the scrap recycling industry to advertise J. McIntyre's machines alongside the distributor. The conventions took place in various states, but never in New Jersey.
>
> Third, no more than four machines . . . , including the machine that caused the injuries are the basis for this suit, ended up in New Jersey.

*Id.* at 2786. Additionally, the New Jersey Supreme Court noted that "J. McIntyre held both United States and European patents on its recycling technology" and "the U.S. distributor structured its advertising and sales efforts in accordance with J. McIntyre's direction and guidance whenever possible, and [] at least some of the machines were sold on consignment to the distributor." *Id.* (internal citations and quotation marks omitted).

Justice Kennedy, in reviewing the Supreme Court's jurisprudence on personal jurisdiction, recognized that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it

is not enough that the defendant might have predicted its goods will reach the forum State." *Id.* at 2788. Furthermore, "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *Id.* at 2789. Justice Kennedy specifically recognized in the context of the case before the Court, "[h]ere the question concerns the authority of a New Jersey state court to exercise jurisdiction, so it is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant." *Id.* at 2790. He found that the facts recited above "may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market." *Id.*

Likewise, Justice Breyer found the facts insufficient to demonstrate that it was "constitutionally proper to exercise jurisdiction over petitioner J. McIntyre . . . ." *Id.* at 2791. Justice Breyer did not find the "something more" that is required under Supreme Court precedent. *Id.* There were no regular sales in New Jersey, no "special state-related design, advertising, advice, marketing, or anything else." *Id.* Furthermore, Justice Breyer found that J. McIntyre had not otherwise purposefully availed itself within New Jersey, and it had not "delivered its goods in the stream of commerce 'with the expectation that they will be purchased' by New Jersey users." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–298 (1980)).

Justice Breyer did not join in the plurality opinion's reasoning because in his view, the case could be determined by the Court's precedents. *Id.* at 2791. Justice Breyer found it too strict to preclude jurisdiction in every case "where a defendant 'does not inten[d] to submit to the power of a sovereign' and cannot 'be said to have targeted the forum,'" especially in light of the issues presented by sales over the internet. *Id.* at 2793 (quoting *id.* at 2788). And he did not agree with the New Jersey Supreme Court because its reasoning was too broad, subjecting a defendant

to jurisdiction if it "knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states." *Id.* (citation omitted). Justice Breyer was concerned that such a blanket rule failed to take into account the size of the manufacturer, the distance of the forum, and the number of items that end up in the particular forum. *Id.* He continued, "the fact that the defendant is a foreign, rather than a domestic, manufacturer makes the basic fairness of an absolute rule yet more uncertain." *Id.* at 2793–94.

The contacts ABISS had with Minnesota are similar to, but still weaker than, those J. McIntyre had with New Jersey. First, ABISS did not have a United States distributor, but rather, it sold its product to Mentor, which assumed full ownership of the product and chose how and whether to distribute it. Second, ABISS's representatives never attended any trade shows or conferences in the United States. Finally, there is no evidence that ABISS directed the sales or marketing efforts of Mentor.

With respect to the plaintiffs' argument that Mentor is a Minnesota corporation, and therefore ABISS targeted Minnesota when it entered into the Exclusive Supply Agreement with Mentor, the Eighth Circuit has held that "merely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum state." *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979). The court went on to explain that "this is particularly true when all elements of the defendant's performance are to take place outside of the forum." *Id.* at 1303-04. Where Mentor's principal place of business is in California, and all elements of ABISS's performance occur in France, the requisite contacts between ABISS and Minnesota clearly do not exist.

Viewing the allegations in the light most favorable to the plaintiffs, and considering the

8

five-factor test employed in the Eighth Circuit, there are simply insufficient contacts with Minnesota to assert personal jurisdiction over ABISS. The allegations do not suggest anything more than the possibility that ABISS's products *might* be sold in Minnesota. Furthermore, there is nothing in the record indicating the extent to which the final products were sold in Minnesota. Factual allegations arising to a greater level than this were found insufficient to exert personal jurisdiction over a defendant by a majority of the Justices in *McIntyre*. 131 S. Ct. at 2788 (Kennedy, J., plurality) ("[A]s a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."); 131 S. Ct. at 2793 (Breyer, J., concurring in judgment) (disagreeing with the proposition that a defendant that "'knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states'" is subject to personal jurisdiction for a products-liability action (quoting *Nicastro v. McIntyre Mach. Am.*, 987 A.2d 575, 592 (N.J. 2010)). Thus, the facts favor a finding that any contacts with Minnesota were a result of ABISS setting its products adrift, which is not enough for this court to exercise personal jurisdiction over it.

The plaintiffs rely on *Clune v. Alimak* in support of their argument that ABISS is subject to personal jurisdiction anywhere in the United States, including Minnesota. 233 F.3d 538, 544 (8th Cir. 2000). However, the stream-of-commerce reasoning advanced in *Clune* was rejected by *J. McIntyre*, which requires that "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *J. McIntyre*, 131 S. Ct. at 2789. Because the fifty states and the United States are distinct sovereigns, "a litigant may have the requisite relationship with the United States Government but not with the government of any individual State." *See id.*

Justice Kennedy recognized that "[p]ersonal jurisdiction . . . restricts 'judicial power not

as a matter of sovereignty, but as a matter of individual liberty,' for due process protects the individual's right to be subject only to lawful power." *J. McIntyre*, 131 S. Ct. at 2789 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "[T]he stream-of-commerce metaphor cannot supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures. . . . [T]he Constitution commands restraint before discarding liberty in the name of expediency." *Id.* 2791. In light of *J. McIntyre* and the foregoing reasoning, I **FIND** *Clune*'s reasoning unpersuasive.

### IV. Conclusion

For the reasons above, it is **ORDERED** that ABISS's motion to dismiss [Docket 9] is **GRANTED**, and it is **ORDERED** that the plaintiffs' motion for leave to file surreply [Docket 16] is **DENIED** as moot.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 26, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE